the horse was not in proper condition; and the defendant testifies to a general examination of the horse—to standing in front of the animal and feeding him sugar—and he says that there was "nothing the matter with the horse" at that time. The defendant showed that there was a nail projecting from a bar across a window in the box stall, and that this nail stood out about half an inch, and that the horse might have been injured by coming in contact with this nail; but, as the plaintiffs offered no evidence to explain the injury, we are of the opinion that it is not important whether this was in fact the cause of the accident. The defendant had established a prima facie case when he had showed that he placed the horse in the hands of the plaintiffs in good condition, and that the animal was injured in a manner which was not likely to occur without negligence, and it was then for the plaintiffs to show that the accident occurred without negligence on their part.

While there was a sharp conflict of evidence upon the question of the disputed items of the plaintiffs' bill, the evidence does not preponderate in either direction sufficiently to justify this court in interfering with the decision of the court below. Judgment was found in favor of the defendant, and the evidence is sufficient to support the judgment.

The judgment appealed from should be affirmed, with costs. All concur.

(100 App. Div. 257)

MAYOR, ETC., OF CITY OF NEW YORK v. HARLEM BRIDGE, M. & F. RY. CO.

(Supreme Court, Appellate Division, First Department. January 6, 1905.)

1. STREET RAILROADS—LIABILITY FOR PAVING STREETS.

In granting a street railroad company a permit to lay its tracks on a street the city fixed as a condition that the company should replace the pavement in accordance with the specifications in use by the department of public works, and to renew the pavement as required by the commissioners, supplying trap block pavement at its own cost between the rails and for a certain distance outside the tracks, and that, if the company should refuse or neglect to do the work on notice, then the city might do the same at the cost of the company. The company accepted the terms of the permit by laying its tracks in the street. Afterward the city council resolved that the street "be paved with granite blocks," and the company was notified of this resolution, and that, if it failed to thus pave the street, the city would do so at the company's expense. *Held* that, the city having paved the street, and the company having failed to pave its portion thereof, the company was liable to the extent of what it would have cost to so pave it with trap block pavement.

Appeal from Trial Term, New York County.

Action by the mayor, aldermen and commonalty of the city of New York against the Harlem Bridge, Morrisania & Fordham Railway Company. From a judgment for defendant and an order denying a new trial, plaintiff appeals. Reversed.

The action is brought by the city of New York to recover of the defendant railway company the cost of paving in 138th street between Third and Ryder avenues the space between and adjacent to the defendant's tracks placed in that street. The defendant company was organized under the railroad law of 1850 (Laws 1850, p. 211, c. 140), and obtained its franchise by chapter 361, p. 603, Laws 1863, which did not, however, authorize the laying of tracks in this part of 138th street, that right being subsequently conferred by chapter

553, p. 745, Laws 1874. In the act of 1863 it was provided in section 3, p. 604, that the defendant should furnish between its tracks and between the rails a macadamized roadbed, which should be "kept in good repair," and outside the rails, six feet on each side the tracks, should place "Belgian or other approved pavement," or also a macadamized roadbed, and keep the same in good repair. The act of 1863 was amended by chapter 815, p. 1789, Laws 1866, by adding to the section cited that whenever the authorities of the town of Morrisania or West Farms "shall decide upon Belgian or other approved paving, one-sixth of the cost of such pavement shall upon completion thereof be paid" by the railway company. In 1871 an act was passed (chapter 658, p. 1436, Laws 1871) "amending section 3 of the Laws of 1863" by providing that the defendant should "keep the surface of the street inside the rails" and for a foot outside thereof "in good and proper repair and order." The defendant contends that it is this statute of 1871 alone which is controlling, and that the pavement supplied by the city was not shown to be necessary by way of repairs, and hence it is under no obligation to pay therefor. The plaintiff contends that, while this statute of 1871 is in force, it did not repeal the act of 1866, which required expenditure by the defendant road for pavement when deemed necessary by the municipal authorities; and that in addition the defendant is bound by the provisions and conditions of the permit obtained from the department of parks, which, after the enactment of the statute of 1874, referred to extending its right to lay tracks in the part of 138th street in question. In 1874 the street in question was of earth surface. The defendant applied to the department of parks, then having jurisdiction over that territory, for permission to lay its tracks and it was granted upon condition, among other things, that the company should replace the pavement of the street as directed by the department, and renew the pavement as required by the commissioners, supplying trap block pavement at its own cost and expense between the rails and for a certain distance outside the tracks, and that, if such work was not done by the defendant upon notice, then the city might do the same at the defendant's expense. The department, having concluded that the street should be paved with granite blocks, called upon the defendant to supply the same beside and between the tracks, which, however, the defendant failed to do, and, after notice that the work would be done by the city and charged to the defendant, the city proceeded to lay the pavement, the cost of which it claims the defendant should pay. At the close of the case both sides asked for direction of a verdict, and the court directed a verdict for the defendant. From the judgment thereupon entered the plaintiff appeals.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Terence Farley, for appellant.

Charles F. Brown, for respondent.

O'BRIEN, J. It may be conceded that no obligation rests upon the railroad company to pave the streets upon which their tracks are laid except such as is imposed either by ordinance or statute, or as the result of conditions affixed to the franchise or the permit under right of which the road was constructed. It is contended by the appellant that pursuant to chapter 815, p. 1789, Laws 1866, which amended chapter 361, p. 603, Laws 1863, the cost of repaving the street to the extent of one-sixth was imposed upon the railroad company. Chapter 361, p. 603, of the Laws of 1863, was subsequently amended by chapter 658, p. 1436, Laws 1871, and it is contended by the respondent that the effect of this latter enactment of 1871 was to repeal the act of 1866. Whether this is true or not, we deem it unnecessary to decide, though our inclination would be, were it necessary, to hold that the act of 1871 did repeal the act of 1866. Assuming that the act of 1866 was repealed by the act of 1871, there was imposed by the latter the obligation to repair; and, although this is a requirement general in its nature,

there is strong reason for holding that the provision was sufficient to compel the relaying by the railway company of pavement of modern character, and appropriate to changing conditions in the street upon which the tracks were laid, when called upon to do so by the municipal authorities.  Thus, in the case of Philadelphia v. Ridge Avenue Ry. Co., 143 Pa. 444, 22 Atl. 695, it was said with reference to a similar provision:

"The duties specified in the charter were imposed with reference to the changes and improved methods of street paving, which experience might sanction as superior and more economical than old methods.  In other words, the company is bound to keep pace with the progress of the age in which it continues to exercise its corporate functions."

Upon another ground, however, we think the defendant is liable in whole or part for the amount sued for.  The record shows that after obtaining the franchise an application was made by the railroad to the park department, which then had jurisdiction over that part of the territory in which it was proposed to construct the road, for permission to lay the tracks; and that the department, in granting the permit, affixed as a condition that:

"The said company shall replace the pavement * * * in accordance with the specifications in use by the department of public parks for laying new pavements and to be renewed at such times and places as may be required by the commissioners * * * immediately upon notice being given to said company. * * * In the relaying of the pavements the said railway company shall provide and furnish at its cost and expense whatever new materials may be required. * * * Along that portion of the route which is unpaved * * * the space between the rails of each track and between the tracks and outside and adjoining the outer rails for a space of two (2) feet wide, shall be paved with trap block pavement * * * in such manner as shall be directed by the commissioner. * * * If said company * * * shall refuse or neglect to carry out any of the provisions or requirements of this permit, * * * the commissioner * * * shall have the right and power to do the same at the cost and expense of said company."

Thereafter the company laid its tracks in the street in question, thus accepting the terms of this permit, and it appears that on December 11, 1888, a resolution of the board of aldermen was approved by the mayor that said street "be paved with granite block pavements * * * under the direction of the commissioner"; and the defendant, by its answer, admits that on or about March 4, 1889, it received a notification from the department of parks that it was required "to pave the surface of said street inside the rails * * * and for one foot outside thereof in granite blocks * * * in accordance with specifications * * * of the department of public parks," and was further notified that, unless it commenced the construction of said pavement, the city would proceed to construct it at the expense of the company, and refused to construct said pavement on the ground that it was not its duty so to do, and the work was done by the city.

It will be noticed that by the terms of the permit the character of the pavement which the railroad was to lay when necessary, as compared with the pavement which was actually laid to recover the cost of which this suit was brought, was different, and it may be that the true rule of liability would be to charge the defendant with the cost only of such pavement as it was required to lay pursuant to the permit, an amount which is susceptible of proof.  The more important question, however, is whether the terms of the permit are binding upon the

company. It will be conceded, we think, taking the law as it stood when the permit was applied for, that an obligation rested upon the railroad company to keep the street between the tracks in good order and repair; and, for the purpose of having some means of determining when the necessity arose for repairing, it was important that the right of deciding that question should rest with the department having control of the streets. To the end that there should be a uniform policy with respect to the entire street as to the kind and character of the pavement, and that the railroad company should not be free to repair the portion of the street near the tracks, and keep it in order by adopting one system of pavement while the remainder of the street under the control of the department had a pavement of a different kind, the right of determining the nature of the pavement to be used should rest with the department. It was therefore competent for the head of that department to arrange with the railway company as to the manner in which these ends should be accomplished; and in granting the permit, which was accepted and acted upon by the company, and which contained the condition to which we have referred, we think the fulfilling of this condition became obligatory upon the company. At the time it might have refused to accept the permit to lay its rails on the street when coupled with such a condition, but, having accepted it, we think it should fulfill in good faith the condition.

It may be that, if no obligation rested upon the railway company under the law to pave or keep in repair the streets to any extent, the head of a department could not, in the absence of legal warrant, impose such a condition. We are, however, not dealing with that question, because it here appears, as we have pointed out, that there was a legal obligation resting upon the road to assume its share of the burden in keeping that portion of the street between the rails in good order and repair, and at a grade conformable to the grade that was fixed for the remainder of the street. With a view, therefore, of setting at rest the extent of this obligation, and of securing, as we have said, uniformity in the pavement, it was certainly competent for the head of the department and the railroad company to agree as to the extent to which the latter should assume and discharge this obligation. Having applied for and secured the permit which had annexed to it the conditions referred to, we do not think that the railroad can in justice repudiate the conditions, and thus obtain only the advantages and become absolved from any of the burdens. Upon the ground, therefore, that it was competent for the department and the railway company to agree upon the conditions upon which the permit should be issued, and there being evidence here of what the conditions were with respect to the pavement, we think they are binding upon the company, and it should be required to discharge its obligations by paying the amount of the expense to which the city was put in repairing or in paving that portion of the street between and adjacent to the tracks, which, upon proper notice, the company failed to do. To the extent, therefore, of what it would cost to so pave it with trap block pavement, the company should be held responsible, on proof that in the way of repairs a repavement was necessary.

It follows accordingly that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.